**People of the State of Illinois, Plaintiff-Appellee, v. William Lanier and James Hemphill, Defendants-Appellants.**

**Gen. Nos. 50,976, 50,977.**

First District, Fourth Division.

June 26, 1968.

 

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Carl M. Walsh, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

CRIME CHARGED IN THE INDICTMENT
Armed robbery. Ill Rev Stats (1965), c 38, § 18–2.

DEFENSE AT TRIAL
Alibi.

JUDGMENT
After a bench trial, the court found both defendants guilty, sentencing Lanier to a term of 1 to 10 years and Hemphill to a term of 2 to 10 years.

POINTS RAISED ON APPEAL
(1) Defendants were erroneously denied access to a police report.
(2) The identification evidence was not sufficient to establish defendants' guilt beyond a reasonable doubt.
(3) Defendants were prejudiced by a policeman's testimony that they fitted the description given him by the complaining witness.

EVIDENCE

*Dan C. Shipp,* for the State.

He had driven a taxi for the Yellow Cab Company for five and one half months on August 23, 1964. At approximately 4:00 a. m. on that date two men hailed his cab and he stopped. The two men stood there talking for about two minutes before entering the cab and during that time he observed them. He then drove them to their destination. Upon arrival, the men held him up at knife point, took $27.60, pushed him out of his cab, and drove away in it. Thereupon, he went to the police to report the robbery.

On cross-examination Shipp testified that he had given to the police a description of the two robbers as being males; one dark brownskinned, the other light brownskinned; one five feet seven inches tall, the other about one to three inches shorter; one had a thin face, the other was round faced; one man had a tooth missing; both men had processed hair and wore black suits, black ties and white shirts; neither man wore a hat.

About two hours later that morning, Shipp saw the two men again and gave a description of the men to the police. Still later he saw defendants at the police station and identified them as the men who had robbed him.

*Joseph Celmer,* for the State.

He had been a police officer for 19 years and was on duty at the time in question. He took the report of the robbery from Shipp and "beamed it in." The cab was recovered three blocks away by another squad. About two hours later he and the other policemen arrested defendants as they were leaving a bowling alley. The defendants fitted Shipp's description and were in the general vicinity where the crime was committed. They were then taken as "suspects" to be seen by Shipp and, after he identified them as the robbers, they were taken into custody.

91

*Defendant William Lanier.*

He and his codefendant were together at a party at the time of the robbery. Later, after escorting their female companions to their car, defendants took a bus to a bar and when it closed at 5:00 a. m., they went to a bowling alley to get something to eat and to watch the people bowl. They had just left there when they were arrested. He denied the crime charged. One of his front teeth was missing and had been missing on the date of the robbery.

*Emma Willis and Pearline Holmes,* for the defense.

On the morning of the robbery they were at a dancing and drinking party with defendants. Hemphill arrived at about 1:30 a. m. and Lanier came at 3:30. They all stayed until approximately 4:10 a. m., when defendants walked them to their car which was parked near 7324 S. Carpenter Street, the scene of the party.

OPINION

(1) Defendants make the point that the trial court committed reversible error by denying their request to be furnished with a police report incorporating a statement given to the police by the complaining witness. They rely on People v. Cole, 30 Ill2d 375, 381, 196 NE2d 691, in which the court said: "[W]here it appears that there is evidence in the possession and control of the prosecution favorable to the defendant, a right sense of justice demands that it should be available, unless there are strong reasons otherwise." Recognizing this principle, it is a prerequisite, nevertheless, that defendant "lay a foundation to show that a transcribed statement of the witness exists." People v. Golson, 37 Ill2d 419, 422, 226 NE2d 610. See also People v. Wright, 30 Ill2d 519, 532, 198 NE2d 316; People v. Wolff, 19 Ill2d 318, 328, 167 NE2d 197.

On cross-examination, the complaining witness in the instant case recounted the description of the robbers he gave to the police on the night of the robbery. The record then discloses:

Defense Counsel: And, did they [the policemen] write in their information, did they write their information down as you were talking to them?

Witness: Yes, they wrote it down.

Defense Counsel: And, did you sign anything at that time?

Witness: Yes, I did.

Defense Counsel: At this time, I will ask the State's Attorney to furnish me with any statements.

State's Attorney: He signed a complaint.

Defense Counsel: *If there is a statement reduced to writing, Judge, signed by the complaining witness, I will ask the State's Attorney to tender to me at this time.*

State's Attorney: We do not have any at this time.

The Court: Do you have any?

State's Attorney: No.

The Court: Well, he said he signed a paper. Do you know what kind of paper, Mr. Martwick [State's Attorney]?

State's Attorney: No, Judge, he signed a complaint, Judge.

The Court: Well, he did not say he signed a statement.

Defense Counsel: I make a motion at this time if there is none—

The Court: You have not laid a proper foundation. He said he signed a paper. What kind of paper?

| | |
|---|---|
| Defense Counsel: | I—Judge, I laid the foundation as to the matter of it being reduced to writing from his conversation wherein he gave a description to the police of the 2 men that robbed him. |
| Defense Counsel: | Did you sign a statement, sir? |
| Witness: | I don't know nothing about no statement. |
| Defense Counsel: | Judge, I renew my motion. |
| The Court: | What is the man's answer? |
| Defense Counsel: | He does not remember. |
| The Court: | You do not remember; you signed a paper, you do not know what was in that, is that what you are trying to say? |
| Witness: | I signed a paper. |
| The Court: | What? I cannot hear you. Did you sign a paper? |
| Witness: | Yes, I did sign a paper. |
| The Court: | And do you know what was on the paper? |
| Witness: | I didn't pay any attention. |
| The Court: | Oh, he said he did not pay any attention what was on the paper. It could have been the complaint. |
| State's Attorney: | *For the record, we have no statement of the complainant.* |
| The Court: | All right. Let the record show that the State's Attorney knows there is no statement. |

■ From this colloquy two things should be noted: (1) defendants' request for "a statement reduced to writing, . . . signed by the complaining witness," and (2) the State's uncontroverted denial of having such a statement in its possession. We therefore conclude that the foundation required by the Golson case was not

established. In this court, however, and for the first time in the case, defendants claim that they should have been given a copy of the police report, presumably the one "beamed in" by Officer Celmer. (See his testimony above.) This belated request is not only not supported by defendants' attempted foundation relating to a signed statement, but it also lacks any showing that such a transcribed police report was in existence at the time of the trial. Furthermore, the request comes too late when made for the first time in this court.

(2) Defendants also argue that the identification evidence was insufficient because of the preconditioning by the police officers of the complaining witness prior to his identifying defendants as the robbers. Here, defendants rely on People v. Sanders, 357 Ill 610, 622, 192 NE 697, where the court said:

> We have heretofore called attention to the fact that where the witness is told, in advance of the identification, that *the guilty party* is in the custody of the police officials and the prisoner is produced alone for the purpose of identification, the weight of the evidence of identification is impaired. (Emphasis supplied.)

[2] A review of the police officer's testimony in this case, however, shows that the complaining witness was not, as contended by defendants, "apprised of the fact that they [the police] had the culprits in custody." The record of the arresting policeman's testimony reads:

> Well, at that time I told Mr. Shipp and Mr. Brown that I had—we had *two suspects* that we wanted them to take a look at. So we took them out of the cab—the squad car, and had them in the squad car where Mr. Shipp looked them over. (Emphasis supplied.)

95

The difference between an advance statement that "the guilty party" was in custody, and a request to look at "two suspects," is sufficiently patent to distinguish the cases without more. We find no prejudice to defendants in the procedure followed here.

■ ■ (3) While not raised in their briefs, defendants made a point on oral argument that they were prejudiced by the testimony of the police officer that defendants fitted the description given to him by the complaining witness, citing People v. Wright, 65 Ill App 2d 23, 212 NE2d 126, and People v. Lukoszus, 242 Ill 101, 89 NE 749. There are important distinctions, however, as the testimony in those cases was given on direct examination, and in Lukoszus was admitted over the objection of defense counsel, whereas in the case before us the statement was elicited on cross-examination and no objection was made. We consider that this did not constitute reversible error or prejudice, or, if it did, that it was not the kind of "plain error" which we should notice without its having been brought to the attention of the trial judge. Supreme Court Rule 615; Ill Rev Stats (1967), c 110A, § 615, superseding c 38, § 121–9. See People v. Van Hyning, 72 Ill App2d 168, 175–176, 219 NE2d 268.

DECISION

The judgments of the Circuit Court are affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.